UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLARENCE DELANEY, JR.,

                              Plaintiff,                    No. 19-CV-6729 (KMK)

                    v.                                      OPINION & ORDER

C.O. CANFIELD, *et al.*,

                              Defendants.

Appearances:

Clarence DeLaney, Jr.
New York, NY
*Pro se Plaintiff*

Janice Powers, Esq.
Office of the Attorney General for the State of New York
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Clarence DeLaney, Jr. ("Plaintiff"), proceeding pro se, brings this Complaint, pursuant to

42 U.S.C. § 1983 and state law, against Defendants, alleging that they violated his rights and

caused him injury at Fishkill Correctional Facility ("Fishkill") when they prevented Plaintiff

from using the bathroom while waiting for his medication, denied Plaintiff certain medical

treatments and equipment, and destroyed some of Plaintiff's personal property.  (*See* Compl.

(Dkt. No. 2).)[1]  Before the Court is Defendants' Motion To Dismiss the Complaint (the

_____

        [1] "Defendants" refers to C.O. Canfield ("Canfield"), C.O. Lee ("Lee"), Sgt. Cofield
("Cofield"), Sgt. Vines ("Vines"), Captain Churns ("Churns"), Lt. Sablinksi ("Sablinski"), S.
Urbanksi ("Urbanski"), E. Williams ("Williams"), First Deputy Superintendent L. Fields
("Fields"), Superintendent A. Akinyombo ("Akinyombo"), Anthony Annucci ("Annucci"), and
Nurse Practitioner Ms. Thomas ("Thomas").  (*See* Dkt.; Compl.)

"Motion"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 37).)   For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and any exhibits attached therein, and are assumed true for the purpose of resolving the instant Motion.

#### 1.  Bathroom Use

Plaintiff alleges that, at Fishkill, he was part of "a group of close to [100] or more inmates who routinely every morning had to attend early chow and then walk together as a group . . . to receive nurse administered medication."  (Compl. 5.)[2]  It took at least 30 minutes and sometimes "up to an hour or more" for every inmate to receive their medication.  (*Id*.)  The length of time it took for every inmate to receive his medication could depend on the nurse giving out medication that day or whether there was a "code red [or] blue going on."  (*Id*.) Plaintiff alleges that all the inmates waiting to receive medication would have to wait until every inmate in line received their medication for the group to be escorted back to their housing units. (*Id*.)  Plaintiff claims that, due to the wait time for medication, on many days, he "unnecessarily urinated or defecated on [him]self," which caused him emotional, mental, and physical distress. (*Id*.)

Plaintiff takes medication for high blood pressure and for digestive issues.  (*See id*. at 6.) He claims to be disabled, as defined by the Americans with Disabilities Act (the "ADA"), and "medically unassigned" from prison labor duties.  (*Id*. at 7.)  Plaintiff allegedly experiences

---

[2] The Court cites to the ECF page numbers stamped on the upper-right hand corner of the Complaint.

2

uncontrollable bladder and bowel movements, most often during breakfast and the morning

medication run.  (*See id*. at 6.)  During the medication distribution, Plaintiff first has to receive

medication from the "mental health" window before walking to the "other side" to wait in line

for medication for his physical ailments.  (*Id*.)

Plaintiff claims that, although there is an inmate restroom in the area where the

medication distribution occurs, Defendant Canfield bans all inmates from using that restroom

during "the entire medication run."  (*Id*. at 7.)  Canfield has allegedly said, "I don't care if you

have to piss or shit in your pants, I am not letting you use the restroom."  (*Id*.)  Canfield would

also threaten inmates with disciplinary infractions if they tried to use the restroom in question.

(*Id*.)  Plaintiff alleges that Canfield has behaved this way with him and with other inmates.  (*See

id*. at 7–8.)  As a result, Plaintiff has defecated and urinated on himself on "several occasions."

(*Id*. at 8.)

Plaintiff claims that he has told many other members of the Fishkill staff about Canfield's

behavior, including Defendants Cofield, Churns, Williams, Fields, Akinyombo, Annucci, and

Thomas.  (*Id*.)  However, they have "allow[ed]" the practice to continue.  (*Id*.)  Plaintiff also

claims that Thomas has refused to give him a special permit to use the restroom, despite his

medical issues.  (*Id*.)

### 2.  Medical Treatments

When Plaintiff first arrived at Fishkill, he was assigned to a "Dr. Davis," to whom

Plaintiff explained the nature of his chronic medical ailments, which include high blood pressure,

sleep apnea, orthopedic problems, and Type II diabetes.  (*Id*. at 10.)  Dr. Davis passed away in

March or April 2019, and Plaintiff's medical file was subsequently passed on to Defendant

Thomas.  (*Id*.)

3

Plaintiff claims that Thomas rejected many of Plaintiff's medical requests, claiming that "Albany would reject paying for the cost of medical" expenses such as an MRI or a sleep apnea machine. (*Id*.) However, according to Plaintiff, he had been using a sleep apnea machine without issue at other correctional facilities. (*Id*.) Thomas then told Plaintiff that he would be required to sit for a sleep study in order to determine whether a sleep apnea machine would be provided to him. (*Id*.) Plaintiff claims the sleep study, conducted on May 23, 2019, was a "joke with equipment that you could buy in a toy store." (*Id*.) Thomas never contacted Plaintiff regarding the results of the sleep study. (*Id*.) When Plaintiff attempted to follow up with Defendant Akinyombo, he was told that he had not been approved for use of a sleep apnea machine. (*Id*.)

Plaintiff also claims that he was rejected from blood tests despite the fact that he had requested one from Thomas. (*Id*. at 11.) Plaintiff told Thomas that he needed a blood test because he had been diagnosed with Type II diabetes in the past and because he had a family history of the disease. (*Id*.) Thomas allegedly ignored the request, so Plaintiff instead "signed for sick call," claiming that he felt diabetes symptoms. (*Id*.) Subsequently, Thomas gave Plaintiff a urine analysis test instead of a blood test, which "did[ not] make any sense to . . . Plaintiff." (*Id*.) Plaintiff claims that both Thomas and Akinyombo ignored his medical needs and, as a result, he continues to struggle with sleep. (*Id*.)

### 3.  Personal Property and Subsequent Grievances

Plaintiff further alleges that Fishkill staff interfered with his personal property. Specifically, on May 23, 2019, he was ordered by Defendant Lee to get ready for a "medical trip," i.e., his overnight sleep study at Green Haven Correctional Facility ("Green Haven"). (*Id*. at 12.) Plaintiff left Fishkill at 8:00 p.m. the night of May 23 and returned at 9:30 a.m. on the

4

morning of May 24.  (*Id.*)  When Plaintiff arrived at his housing unit in the morning, he was told

by a non-party correction officer that his "personal and state property" had been "packed up and

sent to another location of the prison."  (*Id.*)  The correction officer also informed Plaintiff that

his "small locker" had been left in his "cube," so the correction officer had moved it to the "back

room of the dorm so that it could be secured."  (*Id.*)  Plaintiff became angry because the move

was "against rules, regulations, codes, and against" DOCCS policy.  (*Id.*)[3]

When Plaintiff retrieved his relocated property, he discovered that certain items that he

had purchased from the commissary and "many legal documents" were missing.  (*Id.* at 12–13.)

Plaintiff "was advised" that Defendant Lee had packed up his belongings and that he had thrown

away these items in the trash.  (*Id.* at 13.)  Plaintiff was also given other items by inmates who

claimed that they had seen Defendant Lee throw them in the trash.  (*Id.*)

Plaintiff claims that he never received an "I-64" form, an "inventory shee[t]" that is

allegedly mandatory to use whenever an inmate's belongings are packed up and relocated.  (*Id.*)

Plaintiff filed a grievance regarding his property loss, and Plaintiff's attorney also contacted

prison staff.  (*Id.*)[4]  Plaintiff was interviewed about his grievances, but Defendant Sablinski and

other unnamed officers denied his claim.  (*Id.* at 14.)  Plaintiff claims that Sablinski's

determination was "biased and predetermin[e]d" and therefore, makes him liable as a supervising

officer for failing to correct Defendant Lee's purported violation.  (*Id.*)

On June 26, 2019, Plaintiff was ordered to see Defendant Vines, presumably in

connection to his grievances.  (*Id.*)  Plaintiff claims that, during the interview, Vines engaged in

---

[3] "DOCCS" refers to the New York State Department of Corrections and Community Supervision.

[4] The Court assumes that Plaintiff refers to his criminal attorney, as the named counsel does not represent Plaintiff in this Action.  (*See* Dkt.)

"intimidation" and "harassment." (*Id*.) Vines asked Plaintiff about sexual misconduct allegations, and Plaintiff responded that his grievance did not pertain to sexual misconduct. (*Id*. at 14–15.) Plaintiff claims that his grievance continued to be ignored and that Defendant Lee has since threatened him "on a few occasions." (*Id*. at 15.) Plaintiff believes that Lee was suspended as a result of Plaintiff's grievance. (*Id*.)

Plaintiff claims that Fishkill generally has a "bad reputation" regarding the handling of inmate property, filing false tickets against inmates, and not upholding DOCCS rules and regulations. (*Id*.)

### 4.  Plaintiff's Claims

Plaintiff lists several causes of action in his Complaint. The Court construes them as follows. Plaintiff alleges that Canfield violated the Eighth Amendment's protections by denying Plaintiff's requests to use the bathroom during medicine distribution. (*Id*. at 16.) Also pursuant to the Eighth Amendment, Plaintiff claims that Thomas was deliberately indifferent to his medical needs when she ignored his requests for a sleep apnea machine, a blood test, and an MRI to address chronic pain in his "left middle finger." (*Id*. at 16, 23.)[5] Plaintiff also appears to allege Due Process violations based on his purportedly missing property and the failure to rectify the situation through his grievances. (*Id*. at 24.) Plaintiff further claims that a number of supervisory Defendants are liable because they were aware of Canfield's and Lee's actions and allowed them to continue. (*Id*. at 21–22.)

---

[5] Plaintiff did not provide any other context for Thomas's purported denial of an MRI. He merely alleges that Thomas refused to provide either an MRI or physical therapy despite his complaints of "chronic pain" and a "degenerative joint disease," which is also not alleged or explained elsewhere in the Complaint. (Compl. 23.)

Plaintiff also appears to bring a number of additional claims under state law premised on the same factual allegations, including negligence, (*id.* at 18), pain and suffering, (*id.* at 20), infliction of mental and emotional distress, (*id.*), and various violations of state constitutional rights, such as "cruel and unusual punishment," the due process clause, and the equal protection clause, (*id.* at 18–19).

B.  Procedural History

Plaintiff filed his Complaint on July 18, 2019, (*see* Compl.), and Plaintiff's request to proceed in forma pauperis ("IFP") was granted on August 14, 2019, (*see* Dkt. No. 9).  Initially, in a Pre-Motion Letter requesting leave to file the instant Motion, counsel for Defendants stated that she needed more information to accurately identify the individual named as "C.O. Lee" in Plaintiff's Complaint.  (*See* Dkt. No. 30.)  However, the Court set a briefing schedule for Defendants' proposed motion to dismiss, anyway.  (*See* Dkt. No. 31.)  On January 3, 2020, counsel for Defendants notified the Court that she had identified the correct "C.O. Lee" and accepted his request for representation.  (Dkt. No. 40.)

Defendants filed their opening papers on December 30, 2019.  (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 38).)  Plaintiff filed an Opposition on January 9, 2020.  (*See* Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 41).)  On January 17, 2020, Defendants wrote a Letter to the Court stating that they did not intend to file a reply and rested on their moving papers.  (*See* Dkt. No. 46.)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

7

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his

9

opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

    B.  Analysis

      1.  Eighth Amendment Claims

        a.  Conditions of Confinement

"The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation."  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam) (citing, inter alia, *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).  "Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'"  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'"  *Phelps*, 308 F.3d at 185 (quoting *Farmer*, 511 U.S. at 834 (italics omitted)); *see also Garcia v. Fischer*, No. 13-CV-8196, 2016 WL 297729, at *4 (S.D.N.Y. Jan. 22, 2016) (same).  "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker*, 717 F.3d at 125 (citations omitted); *see also Seymore v. Dep't of Corr. Servs.,* No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that '[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a "conditions-of-confinement claim."'" (alteration in original) (citation omitted)).  To meet the subjective element, a plaintiff must show that the defendant "acted with

10

more than mere negligence," and instead knew of and disregarded an "excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125 (citations and quotation marks omitted).  Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).

Plaintiff's allegations, even if true, fail to state a claim for a violation of Plaintiff's constitutional rights.  "The Eighth Amendment is generally not violated where unsanitary conditions are temporary." *D'Attore v. New York City*, No. 10-CV-3102, 2015 WL 556778, at *11 (S.D.N.Y. Feb. 10, 2015) (citations, alteration, and quotation marks omitted), *appeal dismissed*, No. 15-636 (2d Cir. May 11, 2015).  "The temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, does not rise to the level of an objective constitutional violation." *Mateo v. Alexander*, No. 10-CV-8427, 2012 WL 864805, at *5 (S.D.N.Y. Mar. 14, 2012) (citation omitted); *see also May v. DeJesus*, No. 06-CV-1888, 2010 WL 1286800, at *5 (D. Conn. Mar. 30, 2010) ("Courts in this and other circuits have consistently held that an occasional or temporary deprivation of toilet use, does not constitute an extreme deprivation of a basic human need or necessity of life." (collecting cases)); *Whitted v. Lazerson*, No. 96-CV-2746, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (holding that refusing the plaintiff the use of the bathroom, which resulted in the plaintiff urinating in his pants, was not a constitutional violation).  Plaintiff alleges that, at most, he was restricted from using the bathroom for between 30 to 60 minutes five days a week while he waited for medication disbursements.  (*See* Compl. 5–7.)  Lengthier restrictions on bathroom usage have routinely been held not to constitute violations of inmates' constitutional rights.  *See Jones v. Marshall*, No. 08-CV-562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (90-minute

bathroom restriction did not "establish the existence of an objective injury for purposes of eighth Amendment claim" (collecting cases)); *see also Walker v. Dep't of Corr. Serv.*, No. 11-CV-993, 2012 WL 527210, at *1–2 (S.D.N.Y. Feb. 14, 2012) (dismissing a 80-minute bathroom restriction); *Gill v. Riddick*, No. 03-CV-1456, 2005 WL 755745, at *16 (N.D.N.Y. Mar. 31, 2005) (70-minute bathroom restriction); *Bourdon v. Roney*, No. 99-CV-769, 2003 WL 21058177, at *10–11 (N.D.N.Y. Mar. 6, 2003) (three-hour bathroom restriction); *Odom v. Keane*, No. 95-CV-9941, 1997 WL 576088, at *5 (S.D.N.Y. Sept. 17, 1997) (holding that a claim that the plaintiff's toilet did not flush for 10 hours each day for a period of several months did not state a constitutional violation).  Plaintiff has therefore failed to allege that the circumstances "pose[d] an unreasonable risk of serious damage to his health."  *Walker*, 717 F.3d at 125 (citations omitted)

Even if the injury were one that fulfilled the objective prong of the claim, the Complaint also fails to establish that Canfield acted with a "sufficiently culpable state of mind."  *Phelps*, 308 F.3d at 185 (citation and quotation marks omitted).  Plaintiff never alleges that he informed Canfield of how his medical ailments required him to use the bathroom even within the 30-to-60 minute window of medication distribution.  Although Plaintiff alleges that he asked Defendant Thomas for a bathroom pass that he could use while in line, which he never received, (*see* Compl. 10), he never alleges that Canfield knew about his medical needs at all, (*see id*. at 7–10).  Canfield's general statements to the inmate population, such as "I don't care if you have to piss or shit in your pants," (*id*. at 7), are also not by themselves indicative of a sufficiently culpable state of mind, *see Gill*, 2005 WL 755745, at *6, *16 (dismissing Eighth Amendment claims premised on bathroom restrictions where the defendant said, "I don't care if you shit on yourself" (record citation and quotation marks omitted)); *cf. Hart v. City of New York*, No. 11-CV-4678,

2013 WL 6139648, at *9 (S.D.N.Y. Nov. 18, 2013) (denying summary judgment because the plaintiff testified that he had "specifically informed" the defendant officer about his multiple sclerosis, which caused frequent urination and, therefore, a "reasonable juror could find that [the plaintiff] was denied a minimal civilized measure of life's necessities and that [the defendant] had a sufficiently culpable state of mind amounting to deliberate indifference"); *DeBlasio v. Rock*, No. 09-CV-1077, 2011 WL 4478515, at *16 (N.D.N.Y. Sept. 26, 2011) (denying summary judgment where the plaintiff alleged that he had been handcuffed for five hours while "pleading to be released in order to use the bathroom"). Indeed, most of Plaintiff's allegations pertain to how Canfield's restrictions affected *other* inmates who are not parties to this Action. (*See* Compl. 8–10.) Therefore, Plaintiff's conditions-of-confinement claim regarding bathroom access fails, and is dismissed.[6]

### b.  Deliberate Indifference to Medical Needs

Defendants argue that any deliberate indifference to medical needs claim against Defendants Thomas and Akinyombo also fails. (*See* Defs.' Mem. 10–12.) Similar to a

---

[6] To the extent Plaintiff attempts to bring a "Due Process" or "Equal Protection" claim premised on the same facts, they fail. The Court finds no allegations to support such legal claims. To establish a Due Process claim, a plaintiff must show that "(1) he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Thomas v. Calero*, 824 F. Supp. 2d 488, 500 (S.D.N.Y. 2011) (citations and quotation marks omitted). As discussed above, Plaintiff has not shown that any of the alleged facts created an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 276 (N.D.N.Y. 2018) (citations and quotation marks omitted).

The Equal Protection Clause "directs state actors to treat similarly situated people alike." *Heyliger v. Krygier*, 335 F. Supp. 3d 482, 494 (W.D.N.Y. 2018) (citation and quotation marks omitted). "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Id.* (citation and quotation marks omitted). Although Plaintiff claims to be disabled as defined under the ADA, (Compl. 7), Plaintiff also alleges that Canfield universally restricted *all* inmates in the medication line from using the bathroom, (*see id.* at 7–10). Therefore, Plaintiff has not plausibly alleged that he was singled out due to any purported suspect class to which Plaintiff belongs.

conditions-of-confinement claim, a claim for deliberate indifference to medical needs requires a
plaintiff to allege, first, that the "alleged deprivation of adequate medical care [is] sufficiently
serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation
and quotation marks omitted).  Analyzing this objective requirement involves two inquiries:
"whether the prisoner was actually deprived of adequate medical care," and "whether the
inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine
how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or
will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir.
2006) (citation omitted).  "There is no settled, precise metric to guide a court in its estimation of
the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir.
2003).  Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors
to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or
patient would perceive the medical need in question as important and worthy of comment or
treatment, (2) whether the medical condition significantly affects daily activities, and (3) the
existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).  And the
second element requires the plaintiff to show that prison officials were "subjectively reckless in
their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted).  Importantly, neither
"mere negligence" nor "mere disagreement over the proper treatment . . . give[s] rise to an
Eighth Amendment violation." *Bryant v. Capra*, No. 18-CV-10198, 2020 WL 508843, at *9
(S.D.N.Y. Jan. 31, 2020) (citations, alteration, and quotation marks omitted).

   Neither Thomas nor Akinyombo is alleged to have done anything that would give rise to
a claim for deliberate indifference to Plaintiff's medical needs.  Plaintiff's allegations suggest at
most that he disagreed with Thomas's decision to implement a sleep study before deciding

14

whether to provide Plaintiff with a CPAP machine for his sleep apnea, (*see* Compl. 10),

Thomas's decision not to provide an MRI for an unspecified finger injury, (*see id*. at 23), and

Thomas's decision to implement a urine analysis test instead of a blood test to monitor Plaintiff's

diabetes symptoms, (*see id*. at 11).  Plaintiff does not allege that Thomas ignored his medical

complaints entirely; indeed, the Complaint itself shows that Thomas responded to Plaintiff's

complaints of sleep apnea by ordering a sleep study, which ultimately revealed only a "mild"

condition that did not require a CPAP machine.  (Compl. 65; *see also id.* at 10–11, 32, 63.)

Thomas's medical decisions are not indicative of deliberate indifference to any acute medical

condition.  "[A] medical decision not to order an X-ray, or like measures, does not represent

cruel and unusual punishment."  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *accord Riddick v.

Mauer*, 730 F. App'x 34, 37–38 (2d Cir. 2018) (affirming denial of injunctive relief based on the

inmate-plaintiff's claims concerning denials of MRIs, x-rays, and a new mattress because they

constituted "mere disagreements over treatment").  "[T]he essential test is one of medical

necessity and not one simply of desirability."  *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011)

(citation and quotation marks omitted).  Here, Plaintiff alleges only that his medical preferences

were not honored and does not even allege that he experienced any severe or chronic pain as a

result of those choices.  Accordingly, no constitutional violation occurred, and any claim for

deliberate indifference to medical needs is dismissed.  *See id*. (affirming dismissal of a complaint

where the inmate plaintiff alleged that he was denied certain medication and a "nerve conduction

study[, ]leaving him to needlessly suffer" (quotation marks omitted)); *see also Fox v. Fischer*,

242 F. App'x 759, 760 (2d Cir. 2007) (affirming dismissal of deliberate indifference claim

where, despite providing the plaintiff with different medication than the one he desired, there

was "no allegation" that the chosen method "caused harm, if any, sufficiently serious to establish

. . . a deliberate indifference claim" (citation omitted)); *Santana v. Watson*, No. 13-CV-1549, 2014 WL 1803308, at *5 (S.D.N.Y. May 6, 2014) (explaining that even if sleep apnea were "sufficiently grave to be constitutionally cognizable," a claim for medical indifference would still fail because there was "no indication that [the plaintiff's] health declined during the time he was without a CPAP machine, or that the . . . deprivation significantly affected his daily activities or caused him chronic and substantial pain" (footnotes omitted)); *Perez v. City of New York*, No. 13-CV-3328, 2013 WL 6182931, at *1, *3 (S.D.N.Y. Nov. 21, 2013) (dismissing deliberate indifference to medical needs claim where the plaintiff complained that his requests for "certain pain and diabetes medications" were ignored because the plaintiff did not "allege an urgent condition that may produce death, degeneration, or extreme pain" or that the defendant providers' medical choices "created such a condition" (citation, record citation, alteration, and quotation marks omitted)).[7, 8]

### 2.  Plaintiff's Personal Property

Plaintiff also appears to assert claims for loss of property without due process.  (*See* Compl. 12–14.)  However, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S.

---

[7] The Complaint does not allege that Akinyombo made any actual medical decisions. (*See generally* Compl.)  Instead, Plaintiff merely alleges that Akinyombo supervised and/or approved of Thomas's underlying decisions.  (*See id.* at 11, 63, 65.)  Because the Court has determined that Thomas committed no constitutional error, any derivative claim against Akinyombo for approving of Thomas's decisions is also dismissed.

[8] Moreover, to the extent Plaintiff seeks to base a deliberate indifference claim on Thomas's purported denial of a bathroom pass, (*see* Compl. 9), such a claim would also fail because Plaintiff has not alleged that any such deprivation "caused him chronic and substantial pain," *Santana*, 2014 WL 1803308, at *4 (citing *Brock*, 315 F.3d at 162).

517, 533 (1984); *see also Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *13

(S.D.N.Y. Sept. 29, 2014) (same), *appeal dismissed*, No. 14-3839 (2d Cir. Jan. 8, 2015).  In fact,

"the state's action is not complete until and unless it provides or refuses to provide a suitable

post[-]deprivation remedy."  *Acevedo*, 2014 WL 5015470, at *13 (quoting *Hudson*, 468 U.S. at

533).  In applying this doctrine, "the Second Circuit has determined that 'New York in fact

affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims

action.'"  *Id.* (italics omitted) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)); *see

also Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *11 (S.D.N.Y. Aug. 15,

2012) ("New York provides such an adequate post-deprivation remedy in the form of state law

causes of action for negligence, replevin, and conversion." (collecting cases)), *adopted by* 2012

WL 4475156 (S.D.N.Y. Sept. 28, 2012).  District courts thus routinely dismiss claims by inmates

who assert that they were deprived of property by corrections officers.  *See, e.g.*, *JCG v. Ercole*,

No. 11-CV-6844, 2014 WL 1630815, at *32 (S.D.N.Y. Apr. 24, 2014) (dismissing an inmate's

deprivation of property claim because "the existence of an adequate post-deprivation state

remedy precludes a due process claim under § 1983" (citations omitted)), *adopted by* 2014 WL

2769120 (S.D.N.Y. June 18, 2014); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *6

(S.D.N.Y. Mar. 23, 2012) (dismissing an inmate's claim because "a prison's loss of an inmate['s]

property . . . will not support a due process claim redressable under § 1983 if adequate state post-

deprivation remedies are available" (citation and quotation marks omitted)).

Here, the Complaint alleges that other inmates told Plaintiff that Defendant Lee threw

away some of his materials while Plaintiff was away for a medical trip.  (*See* Compl. 12–13.)

The Complaint also attaches a letter from Defendant Sablinksi stating that the missing property

consisted of items that were not secured in Plaintiff's locker when Plaintiff left for his trip and

17

that Plaintiff did receive all the items that he had secured in his locker.  (*See id*. at 41.)  Plaintiff

complains that he never received an "I-64" inventory sheet and that Lee's actions were

unauthorized and outside of normal DOCCS practice.  (*See id*. at 12–13.)  Because the

Complaint thus suggests the deprivation of property was "effected through random and

unauthorized conduct of a state employee"—as opposed to "established state procedure"—

Plaintiff has an adequate post-deprivation remedy under state tort law.  *Hudson*, 468 U.S. at 532–

33.  Consequently, he cannot sustain a § 1983 claim based on the deprivation of his personal

property.  *See Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988) (noting that the "mere

deprivation of personal property would not rise to the level of a constitutional injury" (citation

omitted)).  Therefore, Plaintiff fails to state any claim under the Fourteenth Amendment (or any

other provision) based on his purportedly missing property.

### 3.  Supervisory Liability

Plaintiff also seeks to hold a number of named Defendants liable as supervisors for

explicitly or implicitly approving of Canfield's bathroom restrictions and/or Lee's purported

interference with Plaintiff's property.  (*See* Compl. 21–22.)  Such claims are not legally

cognizable.  It is well established that respondeat superior is not a basis for liability

under § 1983.  *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999); *see also Jamison v.

Fischer*, No. 11-CV-4697, 2012 WL 4767173, at *3 (S.D.N.Y. Sept. 27, 2012) (explaining that

*Iqbal* "rejected the argument that a supervisor's mere knowledge of his subordinate's

discriminatory purpose amounts to the supervisor's violating the Constitution" (citation and

quotation marks omitted)), *appeal not considered by* 617 F. App'x 25 (2d Cir. 2015).  Instead, a

plaintiff seeking to hold a supervisory defendant liable pursuant to § 1983 must allege personal

involvement by the defendant, a requirement that may be satisfied by alleging that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).  Plaintiff has not offered any allegations that establish personal involvement based on application of these factors.  In any event, because the Court has determined that Plaintiff has failed to allege any underlying constitutional violation based on the facts presented, no supervising Defendant may be held liable for being "grossly negligent in supervising subordinates who committed the wrongful acts." *Id*. (citation omitted).  Therefore, any claims for "supervisory liability" are dismissed.

### 4.  State Claims

To the extent any state claims remain, the Court also dismisses them.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (citations omitted)); *Thomas v. Grunberg 77 LLC*, No. 15-CV-1925, 2017 WL 3263141, at *1 (S.D.N.Y. July 28, 2017) (dismissing state claims where the federal claims had been mooted); *Torres v. City of New York*, 248 F. Supp. 2d 333, 334 (S.D.N.Y. 2003) ("Where the basis for pendent jurisdiction is dismissed, ordinarily so should the state law claims be dismissed." (citations omitted)).  Should Plaintiff seek to file an amended complaint, Plaintiff may also reassert his claims under state law and cure any potential deficiencies raised by Defendants in their Motion.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss.  In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. [9]  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Failure to properly and timely amend will likely result in dismissal of the claims against Defendants with prejudice. Plaintiff is encouraged to focus specifically on articulating the factual predicates for the wrongs he *himself* has experienced and not to include generalized allegations regarding other inmates' rumored experiences with Defendants.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 37), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated:   July 10, 2020
      White Plains, New York

 

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[9] Because the Court has dismissed the underlying claims on their merits, the Court does not address Defendants' argument regarding failure to administratively exhaust.  (*See* Defs.' Mem. 13–14.)  Defendants may, of course, raise such an argument again against an amended pleading if it continues to be applicable.